UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  4:16 CR 110 HEA (JMB) |
| ) | |
| ANTONIO STRONG, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Currently before the Court is Defendant Antonio Strong's Motion to Suppress Search Warrant and Any Evidence Derived Therefrom ("Defendant's Motion to Suppress").  (ECF No. 31)  The government filed an opposition to Defendant's Motion to Suppress.  (ECF No. 34)  Pretrial matters, including any motions to suppress evidence, have been referred to the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(b).

Strong contends that any evidence seized during the search of a residence at 4535 Pennsylvania, St. Louis, MO, must be suppressed because the search warrant lacked probable cause and cannot be saved by the Leon good faith exception.  Strong also contends that any evidence seized from his person after his car was stopped by the police must also be suppressed under the fruit of the poisonous tree doctrine.  Strong attached a copy of the state-issued search warrant and affidavit to his Motion to Suppress.  (ECF No. 31-1)

The government contends that the search warrant for 4535 Pennsylvania was supported by ample probable cause, and that even if it was not, the officers executing the warrant were

acting in good faith reliance on that warrant.[1]  The government argues, therefore, that there is no fruit of the poisonous tree issue regarding the subsequent car stop.  The government further contends that at least reasonable suspicion supported the officers' decision to stop Strong's vehicle, and that probable cause supported Strong's arrest.  Finally, the government argues that, because Strong's arrest was lawful, so too was the search incident to arrest of his person.  Thus, the government contends that none of the evidence seized from Strong's residence, vehicle, or person should be suppressed.

On March 9, 2017, the undersigned held an evidentiary hearing in this matter.  Strong was present and represented by Levell D. Littleton.  The government was represented by Assistant United States Attorney Thomas Mehan.  At the hearing, the parties agreed that Strong's Motion to Suppress could be resolved on the basis of the existing record, and that no further testimony would be required.  In particular, the parties agreed, that Strong's arguments rest on his contention that the warrant for the residence at 4535 Pennsylvania lacked probable cause.  No other deficiency is alleged, including the manner of the execution of the warrant.  Thus, if the warrant was supported by probable cause (or saved by the Leon good faith exception) both of Strong's suppression motions would fail.  The parties agreed, therefore, that Strong's Motion to Suppress could be resolved by reviewing the "four corners" of the affidavit in support of the warrant for 4535 Pennsylvania.[2]

Before closing the March 9th hearing, the undersigned gave each party the opportunity to

---

[1] The government also filed a copy of the search warrant in question.  (Gov't Exh. A, ECF No. 34-1)  For simplicity, all references to the search warrant will be to the copy filed by the government.

[2] At the March 9th hearing, the undersigned noted that the affidavit for the warrant included what appeared to be a signature or initials of "J. Doe," who was a source of information for Officer Brandon Johnson, the warrant's affiant. (ECF No. 34-1 at 5)  The parties agreed that J. Doe appeared and signed the application before the issuing judge.

argue or further clarify their respective positions. Both parties elected to stand on their previously submitted written positions.

Having carefully reviewed the warrant and application to search 4535 Pennsylvania, and having fully considered the parties' written submissions, the undersigned makes the following findings of fact, conclusions of law, and recommendations.

## **FINDINGS OF FACT**

1. On April 11, 2014, in the Circuit Court for the City of St. Louis, Officer Brandon Johnson of the City of Saint Louis Police applied for and obtained a warrant authorizing the search of the following premises:

> 4535 Pennsylvania, a multi-family building constructed of brick and wood on the west side of the street with the front door facing east and the address clearly marked 4545

(ECF No. 34-1 at 1, 3) The warrant was issued on the basis of probable cause that "[h]eroin, other illegal illicit narcotics, drug paraphernalia, currency, and firearms" in "[v]iolation of Missouri Controlled Substance Law, Unlawful Use of a Weapon," would be found during the search. (Id. at 1, 2) In particular, the warrant stated:

> Whereas the Judge of this Court from the sworn allegations of said complaint and from the supporting written affidavits filed therewith has found that there is probable cause to believe that allegations of the complaint to be true and probable cause for the issuance of a search warrant therein ….

(Id. at 2)

2. Officer Johnson's affidavit included numerous factual matters attributed to a source referred to as "J. Doe." The affidavit represented that J. Doe had provided information to Officer Johnson "[d]uring the prior two weeks." (Id. at 3)

3. In his affidavit, Officer Johnson attributed the following facts to J. Doe, among other facts:

3

A. J. Doe reported "that a subject with the alias of 'J-Murder' has been selling quantities of heroin from the residence located at 4535 Pennsylvania. J. Doe knows this information to be accurate because he has purchased heroin from J-Murder' at least two times in the past 2 weeks." (Id. at 3)

B. J. Doe described J-Murder's physical appearance. (Id.) J. Doe also described the property at 4535 Pennsylvania. (Id. at 3, 4)

C. J. Doe described two vehicles associated with J-Murder, including "a 2000's model silver Grand Prix bearing MO license plates YH5-H4F and is often parked in the rear of their residence… [and] a 2000's model red Ford Mustang." (Id.)

D. J. Doe generally described two types of weapons J. Doe had seen J-Murder possess, a pistol and what was believed to be an AK-47. (Id.)

E. J. Doe described how J. Doe purchased drugs from J-Murder. In particular, "J. Doe stated he would respond to the rear of the residence and knock on the door to gain entry. 'J-Murder' lets him just inside the rear of the residence to exchange currency for heroin." (Id.)

F. J. Doe further identified J-Murder's girlfriend by name (Royisha) and that J. Doe had seen J-Murder and his girlfriend "driving around the 'Gravois Park Neighborhood' and 'Dutch town Neighborhood' in his silver Grand Prix conducting what [J. Doe] believes to be narcotics transactions from his vehicle." (Id.)

G. J. Doe had overheard conversations between J-Murder and his girlfriend regarding paying people to lookout for police officers. (Id. at 4)

H. J. Doe was shown Department of Revenue photographs of Antonio Strong and Royisha West and identified the two as being the persons J. Doe knew as "J-Murder"

4

and "Royisha."

I.  On April 10, 2014, J. Doe reported to Officer Johnson that J. Doe "had been to the rear of 4535 Pennsylvania and purchased a small amount of heroin from Antonio Strong, and observed him to be in possession of an unknown type of pistol in his waistband…. [J. Doe] also observed a considerable amount of suspected heroin packaged for individual sale inside the residence." (Id. at 4)

4.  In addition to the information attributed to J. Doe, Officer Johnson represented that he had been employed by the St. Louis Police for seven years. Office Johnson represented that, during the daytime on April 10, 2014, he "observed a black male that [Officer Johnson] believed to be Antonio Strong standing on the rear porch of 4535 Pennsylvania for about 5 minutes. [Officer Johnson] also observed an unidentified black male approach the rear of the porch, greet him briefly, and then both subjects entered the residence of 4535 Pennsylvania. The male stayed inside for less than two minutes and then quickly exited the area on foot, the way he arrived."
(Id. at 4-5) Officer Johnson attested that, based on prior narcotics investigations, he knew the behavior "to be indicative of narcotics sales." (Id. at 5)

5.  The warrant affidavit indicates that, on April 11, 2014, at 1:05 p.m., Officer Johnson appeared and signed the affidavit in support of his application for a warrant to search 4535 Pennsylvania before the issuing judge. J. Doe also appeared before the Judge who issued the search warrant and also signed the affidavit as "J D." (Id.)

5

## DISCUSSION, CONCLUSIONS OF LAW, AND RECOMMENDATIONS

As noted above, Strong contends that the affidavit Officer Johnson supplied in support of his application for a warrant to search 4535 Pennsylvania was fatally deficient and lacked sufficient indicia of probable cause. (ECF No. 31 at 4) Strong further argues that the warrant was so lacking in probable cause that it cannot be saved by the good faith exception of United States v. Leon, 468 U.S. 897 (1984). (Id. at 10) Therefore, according to Strong, any evidence seized from his residence must be suppressed. Strong further contends that the subsequent traffic stop of his vehicle, arrest, and search of his person must also be suppressed as fruits of the poisonous tree.[3]

### I.   Probable Cause for Warrant to Search 4535 Pennsylvania

In his motion to suppress the evidence seized from the 4535 Pennsylvania residence, Strong argues that Officer Johnson's affidavit in support of the search warrant lacked probable cause. Strong contends that the affidavit rests on credibility of information provided to Officer Johnson from J. Doe, a confidential source. According to Strong, Officer Johnson's "affidavit mentions nothing regarding the credibility of [J. Doe]," and that "there is no mention in the 4 corners of the affidavit regarding whether [Officer Johnson] had used [J. Doe] in the past and he had proven reliable." (ECF No. 31 at 6, 8) Strong also notes that Officer Johnson did not confirm any of J. Doe's information through traditional methods such as controlled drug purchases or trash pulls. (Id. at 7, 8) Strong suggests that Officer Johnson's one-time surveillance of the residence was insufficient to substantiate J. Doe's claim that Strong was conducting drug sales from the residence. Strong also contends that the public records

---

[3] Strong's Motion to Suppress also includes an argument regarding his standing to contest the search of the 4535 Pennsylvania residence. (ECF No. 31 at 2-4) The government concedes Strong's standing. (ECF No. 34 a6 6 n.4) Accordingly, the undersigned concludes that Strong has standing to challenge each of the suppressible events raised in his Motion to Suppress.

6

information that tended to corroborate J. Doe's information was, "by itself" insufficient to support a finding of probable cause. (Id. at 9)  According to Strong, the police should have taken more steps to corroborate J. Doe's information to protect all citizens from unreasonable searches as seizures. (Id. at 9-10)

"Issuance of a search warrant must be supported by probable cause, which depends on whether, under the totality of the circumstances, there is a fair probability evidence of a crime will be found in a particular place." United States v. Faulkner, 826 F.3d 1139, 1144 (8th Cir. 2016) (citing United States v. Rodriguez, 711 F.3d 928, 936 (8th Cir. 2013)).  See also Johnson v. United States, 333 U.S. 10 (1948); Warden v. Hayden, 387 U.S. 294 (1967); United States v. Keys, 721 F.3d 512, 518 (8th Cir. 2013); Fed. R. Crim. P. 41.  Probable cause is "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). Probable cause may be found in hearsay statements from reliable persons, Gates, 462 U.S. at 245; in hearsay statements from confidential informants corroborated by independent investigation, Draper v. United States, 358 U.S. 307, 313 (1959); or in observations made by trained law enforcement officers, McDonald v. United States, 335 U.S. 451, 454 (1948).  While these are some of the ways in which probable cause is commonly established, they are by no means all-inclusive.

Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. Gates, 462 U.S. at 230.  It is well-established that, when the issuing judge relies on the supporting affidavit to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." United States v. Solomon, 432 F.3d

7

824, 827 (8th Cir. 2005) (citations and quotations omitted); see also United States v. Farlee, 757 F.3d 810, 819 (8th Cir. 2014); United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995). After a judicial officer has issued a warrant upon a finding of probable cause, that finding normally deserves great deference. Gates, 462 U.S. at 236. Thus, "[t]he affidavit should be examined under a common sense approach and not in a hypertechnical fashion." Solomon, 432 F.3d at 827 (citation and quotations omitted). See also United States v. Ventresca, 380 U.S. 102, 109 (1965); Gladney, 48 F.3d at 312 (explaining that "[a]ffidavits must be read in a common-sense and realistic fashion") (citations and quotations omitted).

"Where probable cause depends upon information supplied by an informant, '[t]he core question … is whether the information is reliable.'" Keys, 721 F.3d at 518 (emphasis supplied) (quoting United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)). "[T]he informant's 'reliability, veracity, and basis of knowledge are relevant considerations—but not independent essential elements—in finding probable cause.'" Faulkner, 526 F.3d at 1144 (quoting United States v. Recivich, 793 F.2d 957, 959 (8th Cir. 1986)). The reliability of the information "can be established through independent corroboration or the informant's track record of providing trustworthy information." Id. (emphasis supplied) (citing Williams, 10 F.3d at 593); see also Keys, 721 F.3d at 518. "If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." Keys, 721 F.3d at 518 (quoting Williams, 10 F.3d at 593). "[I]t is well established that even the corroboration of minor, innocent details can suffice to establish probable cause." Id. (quoting United States v. Rodriguez, 711 F.3d 928, 936 (8th Cir. 2013)). Additionally, when an informant provides detailed information to the police in person, the officers receiving that

8

information have the ability to further assess the informant's credibility, and the informant can be held responsible if the allegations are false. See United States v. Braden, 844 F.3d 794, 799 (8th Cir. 2016) (citing Solomon, 432 F.3d at 827-28). Cf. United States v. Leppert, 408 F.3d 1039, 1042 (8th Cir. 2005) (explaining that "an informant's statement against his or her own personal interest (even if others are implicated) is presumptively credible") (citation omitted).

In this case, the warrant indicates that the issuing judge found probable cause on the basis of the affidavit submitted with the warrant application. (ECF No. 34-1 at 2) Thus, the undersigned's probably analysis is confined to the four-corners of the affidavit. See Solomon, 432 F.3d at 827.

Officer Johnson's affidavit supplies sufficient probable cause to support the issuance of the warrant to search 4535 Pennsylvania. Strong is surely correct in noting that the affidavit does not explicitly state that J. Doe has been reliable in the past or that Officer Johnson found J. Doe to be credible.[4] Such a showing, while often useful, is not required. See Keys, 721 F.3d at 518. What is required is some showing that J. Doe's information was reliable. The affidavit and circumstances surrounding Officer Johnson's investigation supply sufficient indicia of reliability.

First, a commonsense reading of the affidavit dictates a conclusion that Officer Johnson met J. Doe in person; J. Doe was a known informant and not an anonymous tipster. See United

---

[4] Although Officer Johnson does not explicitly comment on J. Doe's reliability or credibility, Officer Johnson's affidavit implies that he considered the information from J. Doe to be credible and reliable. For example, in his final paragraph, Officer Johnson states:

> Based on the information provided to me by J. Doe, and my observations during my surveillances, it is my belief and conviction that at the present time, quantities of heroin along with weapons to protect the illicit sales of narcotics are being stored and sold at 4535 Pennsylvania ….

(ECF 34-1 at 5)

9

States v. Scott, 818 F.3d 424, 431-31 (8th Cir. 2016).[5] In fact, J. Doe also appeared before the judge who ultimately issued the search warrant and signed the affidavit (albeit using initials). Thus, both Officer Johnson and the issuing judge had the opportunity to assess J. Doe's credibility. See Braden, 844 F.3d at 799.

Second, the affidavit clearly indicates that Officer Johnson took steps to corroborate substantial aspects of the information J. Doe provided. J. Doe reported that an individual known as "J-Murder" was selling heroin from the 4535 Pennsylvania residence, and that J. Doe had personally purchased heroin from J-Murder at the residence twice within the preceding two weeks. J. Doe provided a physical description of J-Murder, and at least the first name of J-Murder's girlfriend (Royisha). J. Doe also reported that J-Murder and Royisha both had criminal history. Officer Johnson corroborated this information. Officer Johnson located a person named Royisha West in "Crime Matrix" who had prior arrests and outstanding warrants. Officer Johnson determined that J-Murder was an alias for Strong and that Strong had prior arrests, including for controlled substance violations. Officer Johnson presented J. Doe with Department of Revenue photographs of Strong and Royisha West, and J. Doe positively identified those persons as being the people that J. Doe had observed selling heroin at the 4535 Pennsylvania residence.

J. Doe also represented that J-Murder sold heroin to J. Doe from the rear of the residence at 4535 Pennsylvania. J. Doe represented that he would knock on the door and Strong would let him/her just inside the rear of the residence to pay for and receive heroin. J. Doe indicated that

---

[5] In Scott, the Eight Circuit discussed distinctions between confidential sources and anonymous tipsters. The Court explained that, "'[t]hough less reliable than informants with a proven track record, unproven informants are more reliable than anonymous tipsters because the police can hold them responsible for false information.'" Id. at 432 (quoting United States v. Kent, 531 F.3d 642, 648-49 (8th Cir. 2008)).

Strong usually used the rear of the residence to conduct drug sales. J. Doe stated that he/she purchased a small amount of heroin from Strong on April 10, 2014, from the rear of 4535 Pennsylvania and that he/she observed suspected heroin packaged for sale inside the residence. Officer Johnson corroborated this information as well. On April 10, 2014, Officer Johnson conducted daytime surveillance of the area near 4535 Pennsylvania and observed a person Officer Johnson believed to be Strong on the rear porch. Another man approached the porch and entered the 4535 Pennsylvania residence. The other man stayed inside less than two minutes and then departed the area. Officer Johnson concluded that the activity he observed was consistent with narcotic sales.

Thus, within the four-corners of the affidavit, Officer Johnson provided sufficient details for the issuing judge to find probable cause. J. Doe met with Officer Johnson in person. J. Doe appeared before the issuing judge. Officer Johnson corroborated both minor and significant details provided by J. Doe. Under the law, that is sufficient corroboration. See Keys, 721 F.3d at 518. The details included a physical description of Strong and the location and general procedure Strong used for selling heroin.

Furthermore, even though Officer Johnson could have taken additional steps such as a controlled drug purchase, or provided additional information to verify J. Doe's reliability and credibility, and even assuming arguendo that the steps taken fall short of the mark required for effective corroboration of a known confidential source, there is no reason to conclude Officer Johnson is not entitled to good faith reliance on the search warrant. Again, and this is not insignificant, J. Doe appeared before the issuing judge and initialed the affidavit. In such circumstances, Officer Johnson is surely entitled to the benefit of the doubt under the Leon good faith rule.

11

For the foregoing reasons, the undersigned recommends that Strong's motion to suppress physical evidence seized from 4535 Pennsylvania be denied.

## II.     Car Stop, Arrest, and Search Incident to Arrest

J. Doe provided a description of the two vehicles J. Doe had observed Strong use.  One was a silver Grand Prix, and the other was a red Ford Mustang.  After completing his search of 4535 Pennsylvania, Officer Johnson observed Strong driving a red Ford Mustang.  Based on the evidence found during the search of 4535 Pennsylvania, Officer Johnson conducted a traffic stop of the Mustang and arrested Strong for unlawful possession of a firearm, violation of Missouri controlled substance laws, and possession of drug paraphernalia.  Officer Johnson conducted a search of Strong's person incident to this arrest and recovered heroin capsules in Strong's pockets.  Officer Johnson provided Miranda warnings to Strong and Strong made at least one statement to Officer Johnson.  Strong contends that the traffic stop and evidence seized/derived therefrom must be suppressed as fruit of the poisonous tree due to the allegedly unconstitutional search of the 4535 Pennsylvania residence.  See Wong Sun v. United States, 371 U.S. 471 (1963).

As noted above, the parties agreed that Strong's motion to suppress the evidence associated with the vehicle stop rests entirely on his claim that the initial search of 4535 Pennsylvania was unlawful and not saved under Leon.  Inasmuch as the undersigned concludes that the search of 4535 Pennsylvania was conducted pursuant to a facially valid and duly issued search warrant, Strong's further contention that any later stop of his red Mustang was tainted cannot be sustained.  Moreover, in view of the parties' positions, the undersigned need not consider whether the stop and arrest could have been independently sustained.[6]  Accordingly, the

---

[6] In other words, the undersigned need not address whether the officers possessed

12

undersigned further recommends that Strong's motion to suppress the evidence resulting from the vehicle stop be denied.

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Suppress cannot be sustained. Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Search Warrant and Any Evidence Derived Therefrom (ECF No. 31) be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

The trial of this matter has been set for **May 8, 2017, at 9:30 a.m.**, before the Honorable Henry E. Autrey, United States District Judge.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this  23rd  day of  March, 2017.

---

sufficient probable cause or reasonable suspicion to justify stopping Strong's car apart from the search of 4535 Pennsylvania.  Likewise, the undersigned need not address whether any search incident to arrest was invalid or tainted.  Furthermore, in its pleadings, the government represented that, after arresting Strong, Officer Johnson provided Miranda warnings.  At some point, Strong made at least one statement.  Strong has not argued that any custodial statement he made in this matter is subject to suppression.  Even construing Strong's Motion to Suppress to include an argument that his statements should be suppressed as fruit of the poisonous tree, that argument should be rejected.  There was no illegal search and, therefore, no poisonous tree.